IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY LIONEL FLENNORY,      )
                          )      Civil No. 05-1447-PA
         Plaintiff,       )
                          )
    v.                    )      **OPINION AND ORDER**
                          )
PETER LICHTE, et al.,     )
                          )
         Defendants.      )

PANNER, Judge.

Plaintiff Roy Flennory, appearing *pro se,* brings this 42
U.S.C. § 1983 action against defendants Peter Lichte,[1] Rene
Bravo, Raul Ramirez, Dick Myer, All Around Towing, Marion County,
and the City of Woodburn.  Plaintiff may also be attempting to
name the City of Hubbard as a defendant.  All defendants move for
summary judgment, as does Plaintiff.

## **Background**

The facts are stated in the light most favorable to

---

[1] Lichte is sued in his individual capacity,
notwithstanding defense counsel's unsuccessful attempt to induce
the pro se Plaintiff to make a contrary admission, or the
extensive argument in defendants' briefs.

1 - OPINION AND ORDER

Flennory, as the non-moving party.[2]  On the evening of July 27, 2005, Flennory was driving a 1999 Pontiac Grand Am on Highway 99 East near Boones Ferry Road.  He was in the process of moving, and the vehicle was filled with his belongings.

City of Woodburn police officer Peter Lichte made a traffic stop of Flennory.  The latter immediately pulled off the road, stopped his car, and complied with all directives by Lichte.  The officer approached Flennory with gun drawn.  Flennory, who is black, was alarmed by this and yelled to Lichte that the car was not stolen.  Lichte handcuffed Flennory and locked him in the back of Lichte's police car.  Lichte then requested a backup unit. At some point, an Officer Kent arrived.  Flennory consented to a search of his vehicle.  Lichte found nothing illegal.  Lichte also observed no evidence that Flennory was intoxicated or under the influence of methamphetamine.

Lichte arrested Flennory and charged him with reckless driving, a misdemeanor.  Lichte also decided to tow Flennory's vehicle for "safekeeping." Lichte Decl., ¶ 8.  Lichte did not ask Flennory whether he wanted his vehicle towed, or if Flennory preferred to make other arrangements to secure the vehicle. Lichte has not asserted that the vehicle posed a hazard to the public unless immediately towed.  A sketch submitted by Flennory shows the vehicle parked well off the highway.

/ / / /

---

[2]  Plaintiff has moved for summary judgment in his favor (albeit not in the proper form), but such motions by pro se plaintiffs rarely succeed.  The present case is no exception. The opinion therefore discusses only Defendants' motions.

Lichte summoned All Around Towing, with which the City of Woodburn had a pre-existing "non-preferential" relationship. Dick Myer is the owner and sole employee of All Around Towing. Myer towed the vehicle to an undisclosed location.  Flennory was not given a Towed Vehicle Notice.

Before the vehicle was towed, a police officer gave Flennory a few items from the car, including a shirt and a pair of shoes to wear to jail[3] and $347 in cash that was on the center console. Numerous other items remained in the vehicle.  The remaining contents of the vehicle were never formally inventoried. Flennory's version of events is not always clear, but he may be claiming that he requested an inventory before the vehicle was towed but that request was refused.

Flennory represents that the contents of the vehicle when towed included clothing and shoes valued at $1,940; jewelry valued at $1,100;[4] a leather "legal wallet," about 10"x12" in size, containing $850 in currency, receipts, important documents, family photos, and Flennory's birth certificate; and a radar detector Flennory values at $500.  Plaintiff states the vehicle was well maintained and worth approximately $10,000 when towed. / / / /

---

[3]  Defendants repeatedly point out that Flennory was not wearing a shirt or shoes while driving on a hot July evening. That does not appear significant, especially on a motion for summary judgment.

[4]  The items include a gold ring Flennory values at $500; a gold link necklace he values at $600; nine pairs of shoes he values at $500; twelve pair of pants he values at $840; and twenty shirts he values at $600.

Lichte transported Flennory to the Woodburn Police Department.  Lichte summoned City of Hubbard Police Officer Rene Bravo to examine Flennory.  Bravo has certification as a "drug recognition expert."  After briefly talking to Flennory, Bravo told Lichte that Flennory appeared to be emotionally disturbed. Lichte then caused Flennory to be transported to the Marion County Jail.  Flennory was released from that jail about 6:30 a.m. the following morning, July 28, 2005.  Upon his release, Flennory refused to sign a release stating that all his property had been returned to him.

Around 12:30 p.m. the day of his release, July 28, Flennory telephoned All Around Towing and spoke to Dick Myer.[5]  Myer--who had then been in possession of the vehicle a little over twelve hours--allegedly demanded that Flennory pay five hundred dollars in cash to retrieve the car.  Flennory responded he had only three hundred dollars on his person, but had additional money in the car and could pay Myer if given access to those funds.  Myer rejected that proposal, insisting that Flennory pay the five hundred dollars before Myer would let Flennory inside the car or even tell him where the car was located.

Flennory told Myer all his belongings were in the car.  Myer responded that he was very busy, and the only way Flennory could get the car is by paying cash in advance.  Flennory asked Myer

---

[5]  It is unclear how Flennory knew who to contact if he did not receive a Towed Vehicle Notice.  He was at the scene (in the back of the police car) when the vehicle was towed, and may have observed the tow truck, or perhaps he obtained that information from the police department  For purposes of this motion, the court must draw all reasonable inferences in Flennory's favor.

where the tow business was located.  Myer refused to say.
Instead, Myer told Flennory to meet him in a Safeway parking lot
and bring the five hundred dollars.  Only then would Flennory he
be permitted to see the car.

By asking around the area, Flennory finally located the
premises of All Around Towing and went there about 3:30 the same
afternoon.  The office was closed.  Flennory's car was not parked
in the lot.

The following day, July 29, Flennory called All Around
Towing again.  Myer again responded that he was busy, and again
refused to let Flennory access the cash in the vehicle.  Myer
also stated that unless Flennory delivered the money that day, it
would be another two days before Flennory's next opportunity to
retrieve the car.[6]

As it happens, the following day, July 30, Flennory was
arrested for contempt of court (on an unrelated matter).  He was
not released from jail until Oct. 18, 2005.  Meanwhile, on August
18, 2005, Myer (under the name of All Around Towing) filed a
"Claim of Possessory Lien/Notice of Foreclosure Sale."  In that
document, All Around Towing claimed it was owed $245 for towing
the vehicle (a distance of five miles), and $760 for storing the
vehicle for 21 days.  The Notice also asserted that All Around
Towing intended to sell the vehicle at auction on October 6,

---

[6]  OAR 257-050-140(2) states that tow companies on the "non-
preferential list" --as All Around Towing appears to be-- "shall
maintain personnel who can be contacted 24 hours a day to release
impounded vehicles within a 30-minute period of time."  It is
difficult to reconcile that requirement with Myer's (alleged)
statement to Flennory.

2005, and that an additional $760 in storage charges would accrue by then.  To get his car back, Flennory would have to pay $1,765 to All Around Towing.

Myer represents that no one attended the October 6 auction. Myer has not tendered any evidence regarding how that auction was publicized.  Myer then transferred ownership of the car to himself, and drove it to his own house.  Neither the vehicle, nor its contents, have been returned to Flennory, nor has he been compensated for its loss.

Flennory later pled guilty to the reckless driving charge, and was sentenced to 180 days in jail.

## Legal Standards

Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c).  A material fact is one that may affect the outcome.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment may be granted, despite the presence of factual disputes between the parties, if the resolution of those disputes could not change the final result.  Id.  See also Brunet, Redish, & Reiter, SUMMARY JUDGMENT: FEDERAL LAW AND PRACTICE § 6.04 (2d ed. 2000).

The evidence, and reasonable inferences that may be drawn from it, must be viewed in the light most favorable to the non-moving party.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

## Discussion

## A.    Sheriff Ramirez and Marion County

6 - OPINION AND ORDER

Flennory has not stated a valid claim against Marion County or Sheriff Ramirez.  Flennory was held overnight in the Marion County Jail following his arrest.  Plaintiff observes that ORS 133.045 gives a police officer the option of issuing a citation, in lieu of making an arrest, for the offense of reckless driving. However, that is only an option, which Officer Lichte was not obligated to exercise under the facts of this case.

The Marion County Jail did no more than briefly maintain custody of a prisoner who had been duly arrested by a police officer and delivered to the jail's custody.

Flennory also complains he wasn't fed breakfast before his release.  Even if true, a single missed meal will rarely, if ever, rise to the level of a constitutional deprivation.  The record here indicates that Flennory was released at 6:30 a.m., in plenty of time to obtain breakfast elsewhere.

## B.    **Officer Bravo**

Flennory has not stated a valid claim against either Officer Bravo or Bravo's employer, the City of Hubbard (assuming the City is a defendant in this case).  Flennory is upset that Officer Bravo concluded Flennory may be emotionally disturbed.  Officer Bravo is entitled to make such observations in the course of his duties.  His own life, and that of his fellow officers, may depend upon such observations.  To the extent Bravo communicated those observations to the other officers interacting with Flennory that evening, it was for a proper purpose.  Even if Bravo's conclusions were incorrect, as Flennory alleges, Bravo would not be liable in damages to Flennory.

**C.    <u>Dick Myer and All Around Towing</u>**

Myer and All Around Towing argue that, as private citizens, they cannot be liable under 42 U.S.C. § 1983.  I disagree.

Section 1983 furnishes a cause of action against persons who act under "color of state law."  Though the typical § 1983 defendant is a public official who allegedly abused the position given to him by the State, <u>West v. Atkins</u>, 487 U.S. 42, 49-50 (1988), there are circumstances in which a private actor also may be liable under section 1983.  <u>Id.</u>; <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838-43 (1982) (reviewing prior cases).

"[T]he deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . .  [and] the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982). "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." <u>Id.</u> at 941.  That appears to have been the situation here, or at least the record is sufficient to support such a conclusion for purposes of this summary judgment motion.

State action also has been found where there is a symbiotic relationship between a public and a private entity.  <u>See</u> <u>Burton</u>

v. Wilmington Parking Authority, 365 U.S. 715, 723-24 (1961) (restaurant in city parking garage).  All Around Towing appears to have a very profitable arrangement with the City of Woodburn. This relationship allows All Around Towing to obtain cars from private citizens, without the owner's consent, tow such vehicles, and demand exorbitant sums for the return of those vehicles.

A jury might conclude that the rates charged by All Around Towing far exceed what a person would voluntarily pay to have a disabled car towed or temporarily stored, let alone the cost of providing those services plus a reasonable profit.  The sums that All Around Towing demanded from Flennory included a $140 "hookup fee," a $50 "dispatch fee," six dollars per mile for towing, plus one thousand dollars a month to store a 1999 Pontiac in a dirt lot.  The court takes judicial notice that the monthly rate for parking at a paved lot in downtown Portland was around $150 during that time period.

Before a car is released, the City of Woodburn also insists that the vehicle owner pay the City a $150 "administrative fee" to "obtain a release from the police department" --which release is available only during limited hours.

Ultimately, the City of Woodburn and All Around Towing both stand to profit from impounding cars, at the expense of vehicle owners such as Flennory.

Viewing the facts in the light most favorable to Flennory, Myer's conduct raises serious questions.  Myer allegedly demanded $500 for having towed a car five miles, and refused to permit Flennory access to the cash in the vehicle.  Myer allegedly

insisted on a cash transaction in a Safeway parking lot, and refused to reveal the location of his business.  Myer allegedly charged $1,000 a month to store the car in a dirt lot.

Ostensibly, the car was towed for Flennory's benefit, so the car and its contents would be secure.  Within a short time, Myer had title to the car and contents, and Flennory had nothing.  A jury could conclude that this conduct, undertaken by Myer and All Around Towing with the aid and imprimatur of the Woodburn Police Department, deprived Flennory of procedural and substantive due process rights secured by the Fourteenth Amendment.

At trial, the facts may prove very different than Flennory has represented, but there will need to be a trial.  Defendants Myer and All Around Towing are not entitled to summary judgment.

D.    **Officer Lichte and the City of Woodburn**

Officer Lichte acted within his lawful discretion by electing to arrest Flennory, instead of merely giving him a citation.  Officer Lichte also acted within his lawful discretion when he asked Officer Bravo to examine Flennory.

However, the court has been unable to ascertain what statutory authority Officer Lichte relied upon in ordering the vehicle towed.  ORS 819.180 requires that a towed vehicle notice state "the statute, ordinance or rule under which the vehicle has been taken into custody and removed."  The Notice that Lichte allegedly gave Flennory (but which Flennory denies receiving) cites no legal authority justifying the seizure.

No authority was cited in Lichte's summary judgment materials, reports, or affidavits.  Lichte does not contend the

vehicle was seized as evidence in a criminal case, or pursuant to a forfeiture statute.  ORS 809.700 does not apply, since the seizure was not pursuant to a court order following a conviction. ORS 809.720 does not seem to apply either.  Reckless driving is not one of the offenses listed therein, and Lichte does not contend he towed the vehicle because Flennory was driving under the influence of intoxicants.

ORS 819.110 authorizes the towing of disabled or abandoned vehicles that have been left standing for at least 24 hours. Flennory's vehicle did not qualify.  It was not abandoned or disabled, and had been on the roadside for only a few minutes. In addition, ORS 819.170 requires that a notice of intent to tow be posted on the vehicle at least 24 hours beforehand.

ORS 819.120 authorizes removal of parked vehicles that "constitute a hazard or obstruction."  Flennory claims the vehicle was well off the road, and Lichte has never argued that Flennory's vehicle posed a hazard or obstruction.  Rather, Lichte has asserted that the vehicle was towed "for safekeeping," *i.e.,* for Flennory's protection.  That seems odd, given the severe financial implications to the owner of having a vehicle towed in Woodburn.  Lichte does not contend Flennory asked that the vehicle be towed.  Nor does Lichte say he offered to let Flennory make other arrangements to safeguard the vehicle, such as asking a friend to come get the car.

Ultimately, the court is unable to determine what legal authority Lichte relied upon in seizing Flennory's vehicle, and what facts allegedly justified the seizure.  It follows that

11 - OPINION AND ORDER

Lichte's motion for summary judgment must be denied as to the claim for deprivation of Flennory's property.  Summary judgment is granted for Lichte with regard to any claims concerning the arrest itself.

The City of Woodburn is not entitled to summary judgment either.[7]  From this record, the City appears to make a substantial profit on every towed vehicle.  All Around Towing is among a handful of towing companies with whom--viewing the facts in the light most favorable to Flennory-- the City may have a symbiotic relationship.[8]

In addition, the City uses preprinted tow forms that cite no legal authority for towing a vehicle, and have no blank space where such information is to be inserted by the officer.

If the vehicle was towed pursuant to ORS 819.120, the City was required to send Flennory a notice via certified mail within 48 hours, containing certain information including the location where the vehicle was stored, the legal authority under which it was seized, and the amount of the charges incurred.  ORS 819.180.  The City does not contend it furnished Flennory with that notice.[9]

---

[7]  The court is satisfied that Flennory intended to name the City of Woodburn as a defendant and, in any event, the limitations period has not expired and the City could be added even now.  Correctly anticipating that ruling, defendants' summary judgment brief discusses the municipal liability issue.

[8]  That All Around Towing is on what is referred to as a "non-preferential list" does not alter the economic facts.

[9]  ORS 819.190 purports to require the vehicle owner to request a hearing "not more than five days from the mailing date of the notice," if he wishes to challenge either the seizure or

## Conclusion

The motion (docket # 44) for summary judgment by defendants Ramirez and Marion County is granted.  The motion (# 61-2) for summary judgment by defendant Bravo (and Bravo's employer, the City of Hubbard) is granted.  The motion (# 61-1) for summary judgment by defendant Lichte (and the City of Woodburn) is granted as to the arrest of Flennory, but denied as to the towing of Flennory's vehicle and the taking of his property.  The motion (# 68) for summary judgment by Dick Myer and All Around Towing is denied.  The motion (# 66) for summary judgment by Plaintiff Flennory is denied.  Trial remains set for December 14, 2006.

IT IS SO ORDERED.

DATED this 25th day of October, 2006.


/s/ Owen M. Panner
_____
        Owen M. Panner
        United States District Judge

---

charges imposed.  It is doubtful this requirement satisfies due process requirements.  There is no assurance the recipient will receive the notice within five days after mailing, particularly if the addressee must go to the Post Office during business hours to obtain the certified letter.  Many people work during the day. The person may have limited mobility, especially if his car has been seized.  He may be in custody, if the vehicle was impounded following an arrest, or in the hospital if the vehicle was impounded following an accident.  He may also need time to consult with an attorney.  It is difficult to see any overriding justification for such a short limitations period.  It certainly does not preclude Flennory from maintaining this action.  Federal civil rights laws are not negated by contrary state laws.